IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| vs. | ) No. 2:16-cr-00054-DCN |
| | ) |
| DAMON JACKSON | ) |
|   a/k/a "DJ" | ) |
|   a/k/a "Daddy Frost" | ) |
| BAKARI SHAHID MCMILLAN | ) **ORDER** |
|   a/k/a "Bizzle" | ) |
| COREY MILLER | ) |
|   a/k/a "Clow", | ) |
| | ) |
|         Defendants. | ) |
| | ) |

This matter comes before the court on defendant Damon Jackson's ("Jackson") motion in limine to exclude the government's witness, Federal Bureau of Investigations Special Agent James E. Hardie ("Agent Hardie"), from providing expert testimony regarding sex trafficking.[1] Defendant argues that Agent Hardie is not qualified as an expert and that his testimony is not based upon sufficiently reliable methodology to be admissible under the Federal Rules of Evidence and <u>Daubert v. Merrill-Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). For the reasons set forth below, the court denies Jackson's motion in limine.

## I. BACKGROUND

---

[1] The court construes this as a collective motion in limine on behalf of defendants Jackson, Bakari Shahid McMillan ("McMillan"), and Corey Miller ("Miller"). The court concludes this based on the parties' course of conduct in bringing this before the court, as well as the parties' response to the court's inquiry during the hearing on this motion asking whether McMillan and Miller had any further questions for Agent Hardie.

Defendants Jackson, Bakari Shahid McMillan ("McMillan"), and Corey Miller ("Miller") were indicted on multiple counts of trafficking a minor for sex and of sex trafficking by force, fraud, and coercion in connection with a conspiracy to commit sex trafficking in South Carolina, Georgia, and North Carolina. The indictment charges that the defendants conspired to recruit young women, some of whom were less than 18 years old, to work as prostitutes. According to the indictment, the defendants used the website Backpage.com to advertise for sexual services, and used Facebook to recruit victims as well as to communicate with other co-conspirators. Defendants also physically beat or threatened to physical beat the victims to scare and control them. The indictment further charges that members of the conspiracy used heroin and crack cocaine to coerce the victims—many of whom were addicted to drugs—to engage and continue to engage in commercial sex acts.

The government plans to call Agent Hardie as an expert witness.[2] The proposed scope of Agent Hardie's testimony will be on the subculture of the prostitution lifestyle, including pimp/prostitution relationships, the hierarchy of sex trafficking organizations, operations of sex trafficking organizations, and trends in the sex trafficking industry. Agent Hardie will also discuss venues used to facilitate prostitution, destination cities and the prevalence of sex trafficking at major events, the use of websites and social networking sites to facilitate prostitution activities and recruit victims, the means that pimps use to recruit and control victims, and the victomology of sex trafficking. The government does not plan on connecting Agent Hardie's expert testimony with the case

---

[2] This Daubert motion was brought before the court through a series of emails from the parties. The relevant emails are attached as exhibits to this order.

at hand—instead, Agent Hardie will be speaking generally about the aforementioned aspects of sex trafficking. Exhibit A, Rhett Dehart email 3/19/2017 at 10:53 AM.

On March 20, 2017, the court held a hearing on Jackson's motion to exclude, during which the government put forth testimony by Agent Hardie. After the hearing, the court ruled on this motion. This order supplements that previous ruling.

## II. STANDARD

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts serve as gatekeepers for expert testimony. The court has a "special obligation" to ensure that expert testimony is relevant and reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

Under Daubert, the court must address two questions: first, whether the expert's testimony is based on "scientific knowledge"; and second, whether the testimony "will assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592. The first question is answered by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." Id. at 592–93. Several nondispositive factors should be considered in determining the reliability of a particular scientific theory or technique: whether it (1) can be and has been tested; (2) has been subjected to peer

3

review and publication; (3) has a known or potential rate of error; and (4) has attained general acceptance in the pertinent scientific community. See id. at 593–94. In considering these factors, the focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. The factors are not exclusive; what factors are relevant to the analysis "depends upon the particular circumstances of the particular case at issue." Kumho Tire, 526 U.S. at 150.

The second inquiry "goes primarily to relevance." Daubert, 509 U.S. at 591. Relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. Id. at 593. "A review of the caselaw after Daubert shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee's Note to 2000 Amendments. "Daubert did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" Id. (quoting United States v. 14.38 Acres of Land Situated in Leflore Cnty., 80 F.3d 1074, 1078 (5th Cir.1996)).

### III.   DISCUSSION

Jackson challenges Agent Hardie's qualifications to provide expert testimony. Jackson also argues that Agent Hardie's methodology is unreliable, and thus, his testimony should be excluded under Rule 702 and Daubert. The court finds both of these objections to be without merit. The court has reviewed the education, work experience, training, certifications, and other relevant information pertaining to Agent Hardie, and finds that he is qualified to offer expert opinion testimony in this case. The court also finds that Agent Hardie has employed reliable methodology to arrive at his conclusions.

### A. Qualifications

The proponent of expert witness testimony bears the burden of proving that the witness has the necessary qualifications. Rule 702 provides that an expert may be qualified to offer an opinion on the basis of his education, knowledge, skill, training, or experience. "The witness's qualifications to render an expert opinion are . . . liberally judged by Rule 702." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993). The court finds that the government has fulfilled this burden as it relates to Agent Hardie.

Agent Hardie has been an FBI agent since 2001 and currently supervises the northwest Ohio violent crimes against children task force. Additionally, Agent Hardie has work experience that renders him qualified under FRE 702. For five years, from 2008 to 2013, Agent Hardie served as the coordinator of a northwest Ohio task force on child sex trafficking. During this time, he oversaw all of the investigations and personally interviewed hundreds of individuals involved in prostitution, including juvenile sex trafficking victims and pimps. He has provided training to other law enforcement officers in the United States and in his role in the FBI's Innocence Lost National Initiative, Agent Hardie worked in partnership with the FBI, the Department of Justice, and the National Center for Missing and Exploited Children. In 2013, Agent Hardie became the FBI's liaison to the National Center for Missing and Exploited Children, where he was responsible for coordinating sex trafficking matters with 73 FBI task forces nationwide. Agent Hardie has also been deployed to several special events, including three Super Bowls, to work with teams to combat juvenile sex trafficking. Furthermore, Agent Hardie has presented at multiple conferences on sex trafficking, and

has developed and taught an advanced sex trafficking investigations course at the Ohio Police Officers Training Academy.

The fact that Agent Hardie lacks an advanced degree or relevant publications does not render him unqualified to provide expert testimony, especially given his supervisory experience. See United States v. Smith, 520 F.3d 1097, 1105 (9th Cir. 2008) ("No specific credentials or qualifications are mentioned [by Federal Rule of Evidence 702]."). Moreover, a number of courts have found that Agent Hardie is qualified as an expert in sex trafficking. See, e.g., United States v. Willoughby, 742 F.3d 229, 238 (6th Cir. 2014) (finding no abuse of discretion in admitting Agent Hardie as qualified to give expert testimony about the methods pimps use to control their victims); United States v. Jackson, 299 F.R.D. 543, 547 (W.D. Mich. 2014) (finding no abuse of discretion in admitting Agent Hardie as qualified to give expert testimony about means used to recruit and control child victims); United States v. Bryant, 654 F. App'x 807, 814 (6th Cir. 2016) (finding no abuse of discretion in admitting Agent Hardie as qualified to testify as expert witness in sex trafficking case), cert. denied, 137 S. Ct. 412 (2016). In line with these courts, the court finds that Agent Hardie is qualified to testify as an expert in this sex trafficking case, and that his testimony would be relevant in giving the jury the context to evaluate the testimony, particularly as it relates to the means used to recruit and control minors for prostitution as well as to the pimp-prostitute subculture.

Agent Hardie's testimony is certainly relevant to matters at issue in this case, as "[b]y and large, the relationship between prostitutes and pimps is not the subject of common knowledge." United States v. Taylor, 239 F.3d 994, 998 (9th Cir. 2001). While the court acknowledges Jackson's consternation that Agent Hardie does not have

knowledge of the facts of this case, the court notes that Agent Hardie has significant experience in investigating sex-trafficking and, through this experience, has developed substantial knowledge about sex-trafficking throughout the nation. Agent Hardie's training and experience qualify him as an expert on the business of prostitution and the relationships between pimps and prostitutes.

### B. Reliability and Relevance

Jackson argues that Agent Hardie's testimony must be excluded because the pimp-prostitute relationship is not an expert field and Agent Hardie's past testimony has been "very speculative" and based on "limited experience." Jackson further contends that the defendants could "very easily" explain what Hardie would testify to such as the meaning of "certain lingo or words." Exhibit B, Christopher Murphy email 3/19/2017 at 11:05 AM. The court is not persuaded.

Courts have allowed police detectives and officers to be admitted as experts under Daubert, even where the focus is on their vocational knowledge and experience. See United States v. Freeman, 498 F.3d 893, 901 (9th Cir. 2007) (affirming lower courts decision to allow police officer to testify as an expert on encoded drug jargon in a narcotics trial where the police officer had been an officer for eleven years, had more than four years of experience as a narcotics detective, and had participated in over one hundred narcotics investigations). A review of Daubert challenges in sex trafficking cases demonstrates that the use of expert testimony is similarly prevalent. See, e.g., United States v. Anderson, 851 F.2d 384, 392–93 (D.C. Cir. 1988) (finding no abuse of discretion in admitting expert testimony on nature of the relationship between pimps and prostitutes); United States v. Evans, 272 F.3d 1069, 1094 (8th Cir. 2001) (finding no

7

abuse of discretion in allowing expert testimony "regarding the operation of a prostitution ring, including recruitment of prostitutes and the relationship between pimps and prostitutes, and regarding jargon used in such rings"); United States v. Sutherland, 191 Fed. Appx. 737, 740–41 (10th Cir. 2006) (finding no abuse of discretion in allowing expert testimony on general characteristics of prostitute recruitment and retention, including use of affection, photographs, chemical dependency, trading prostitutes, and deprivation of family support); United States v. Anderson, 560 F.3d 275, 281 (5th Cir. 2009) (finding no abuse of discretion in allowing expert testimony on behavior of pimps); United States v. Geddes, 844 F.3d 983, 991 (8th Cir. 2017) (finding no abuse of discretion in expert testimony on operation of sex trafficking rings).

Based on Agent Hardie's education, training, and experience, the court finds that he has specialized knowledge about sex trafficking and is qualified to testify as an expert witness. Many of Jackson's arguments go towards the weight of Agent Hardie's testimony rather than its admissibility. The jury will be permitted to hear Agent Hardie's testimony and draw its own conclusions. Accordingly, Jackson's motion in limine is denied.

## IV.  CONCLUSION

For the foregoing reasons, the court **DENIES** Jackson's motion in limine.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**May 31, 2017
Charleston, South Carolina**