**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 2:16-cr-00054-DCN-1 |
| | ) | No. 2:21-cv-00788-DCN |
| DAMON TAQUAN JACKSON, | ) | |
| | ) | **ORDER** |
| Petitioner. | ) | |
| _____ | ) | |

This matter is before the court on petitioner Damon Taquan Jackson's ("Jackson") motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255, ECF No. 681, and the United States of America's (the "government") motion for summary judgment, ECF No. 695. For the reasons set forth below, the court denies Jackson's motion and grants the government's motion.

## I.  BACKGROUND

Jackson and nine co-defendants (together, "defendants") were indicted on multiple counts of trafficking a minor for sex and of sex trafficking by force, fraud, and coercion in connection with a conspiracy to commit sex trafficking in South Carolina, Georgia, and North Carolina. ECF No. 166. The indictment charges that defendants conspired to recruit young women, some of whom were less than eighteen years old, to work as prostitutes. According to the indictment, defendants used the website Backpage.com to advertise for sexual services and used Facebook to recruit victims and to communicate with other co-conspirators. Defendants also physically beat or threatened to physical beat the victims to scare and control them. Defendants kept all or most of the proceeds from the sex work. The indictment further charges that members of

the conspiracy used heroin and crack cocaine to coerce the victims—many of whom were addicted to drugs—to engage and continue to engage in commercial sex acts.

Jackson's trial began on March 20, 2017. ECF No. 384. On March 24, 2017, the jury found Jackson guilty on one count of conspiracy to commit sex trafficking of a minor, guilty on five counts of sex trafficking by force, fraud, or coercion, and not guilty on one count of sex trafficking by force, fraud, or coercion. ECF No. 394. On July 5, 2018, this court sentenced Jackson to 480 months of imprisonment, followed by supervised release for life. ECF No. 577. Jackson filed an appeal with the United States Court of Appeals for the Fourth Circuit, which, on May 14, 2020, affirmed Jackson's conviction and sentence.[1] ECF No. 617; United States v. McMillan, 813 F. App'x 846 (4th Cir. 2020).

On March 19, 2021, Jackson filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 681. On July 2, 2021, the United States of America (the "government") filed a motion for summary judgment on Jackson's petition. ECF No. 695. Jackson responded to the government's motion on August 5, 2021, ECF No. 700, and the government replied on August 12, 2021, ECF No. 704. As such, the motion is now ripe for review.

## II.  STANDARD

Pursuant to 28 U.S.C. § 2255(a):

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States,

---

[1] On appeal, Jackson's co-defendant, Corey Orentheses Miller ("Miller"), separately argued that there was insufficient evidence to convict him on the conspiracy charge. The Fourth Circuit vacated Miller's conspiracy conviction and sentence but affirmed the criminal judgments against Jackson. ECF No. 617 at 4.

or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The petitioner must prove the grounds for collateral attack by a preponderance of the evidence.[2]  See King v. United States, 2011 WL 3759730, at *2 (D.S.C. Aug. 24, 2011) (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)).

## III.  DISCUSSION

Jackson argues in his motion that he is entitled to relief under § 2255 by asserting ten grounds for why his trial counsel's performance was constitutionally deficient and one ground for why his appellate counsel's performance was constitutionally deficient. The Supreme Court has held that ineffective-assistance-of-counsel claims are permitted on collateral review, so Jackson's claims are properly before the court.  See Massaro v. United States, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").  The court first discusses the law applicable to ineffective assistance of counsel claims and then addresses each of Jackson's submitted grounds for relief in turn.

The Sixth Amendment provides that in all criminal prosecutions, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI.  To show that a defendant's constitutional right to the assistance of counsel was violated, the defendant must demonstrate that (1) his counsel's performance was

---

[2] In deciding a § 2255 petition, the court shall grant a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  The court has reviewed the record in this case and has determined that a hearing is not necessary.

3

2:16-cr-00054-DCN    Date Filed 11/21/22    Entry Number 773    Page 4 of 30

deficient, and (2) the deficient performance prejudiced the petitioner.  Strickland v.

Washington, 466 U.S. 668, 687 (1984).  Counsel's performance is deficient when a

criminal defendant's "representation fell below an objective standard of reasonableness."

Id. at 688.  In assessing counsel's performance, "a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance."  Id. at 689.  "Judicial scrutiny of counsel's performance must be highly

deferential," and "[a] fair assessment of attorney performance requires that every effort

be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective

at the time."  Id.  For a lawyer's representation to violate a defendant's constitutional

rights, "his errors must have been so serious that he was not functioning as the 'counsel'

guaranteed [to] the defendant by the Sixth Amendment."  United States v. Roane, 378

F.3d 382, 404 (4th Cir. 2004) (quoting id. at 687).

To establish prejudice, "[t]he defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  Id. at 694.  A defendant cannot show prejudice

through after-the-fact "subjective preferences."  United States v. Fugit, 703 F.3d 248, 260

(4th Cir. 2012).  As such, the Fourth Circuit has confirmed that "[t]he test is objective,

not subjective."  Id. at 260 (quoting Pilla v. United States, 668 F.3d 368, 373 (6th Cir.

2012)).

## A.  Ineffective Assistance of Trial Counsel

Jackson argues that his trial counsel rendered ineffective assistance of counsel in ten ways.  Prior to engaging in each individual claim of ineffective assistance of counsel, the government argues that there are two general reasons why all of Jackson's claims must fail.  First, the government argues that most of the perceived errors raised by Jackson relate to trial counsel's failure to object or seek curative instructions, but in each instance, the counsel either properly elected not to object or otherwise acted strategically in declining to do so.  The government's argument is more properly considered on a claim-by-claim basis, and the court addresses the argument under each claim below.

Second, the government argues that each purported shortcoming was not prejudicial, as evidenced by the court's pretrial instructions and jury charges and by the split jury verdict.  Specifically, the government argues that the court instructed the jury not to decide the case based on any likes or dislikes, opinions, or sympathy and without any bias or prejudice as to any party.  The government avers that since jurors are presumed to have followed a court's instruction, the court should conclude that the jury was not prejudiced.  Additionally, the jury rendered a split verdict, finding Jackson and a co-defendant not guilty on one charge each but finding another co-defendant, Miller, guilty of all counts.  According to the government, the split verdict demonstrates that the jury carefully considered the evidence and could not have been prejudiced by anything beyond the facts of the case.  The court is unconvinced that either of these factors conclusively proves that the jury could not have been prejudiced by any errors that Jackson's counsel might have committed.  If either occurrence automatically defeated an ineffective assistance of counsel claim, then no such claims could ever be brought so long

as the court instructed the court not to decide the case based on prejudices and the jury rendered a split verdict. Accordingly, the court analyzes each ground in the order raised by Jackson, ultimately finding that each of Jackson's claims of ineffective assistance of counsel fail under the <u>Strickland</u> test.

### 1. Failure to Object to Special Agent James Hardie's "Profiler" Testimony

Jackson first argues that trial counsel should have objected under the Federal Rules of Evidence to the admissibility of Special Agent James Hardie's ("Agent Hardie") so-called "profiler" testimony regarding traits common to sex traffickers and sex trafficking schemes. Agent Hardie testified that it was common for sex traffickers to engage in acts of extreme violence, rape, and manipulation through drug use. Jackson argues that there were never any allegations that he engaged in such acts. As such, these "broad, sweeping generalizations . . . did not describe Jackson's conduct in this case," but rather, "primed the jury to convict Jackson." ECF No. 681 at 8. Jackson further complains about Agent Hardie's testimony that sex trafficking victims are "often scared" to testify against their traffickers, ECF No. 681 at 7, and that prostitutes do not act consensually when they work for a pimp or ingest drugs in their work. Jackson argues that trial counsel failed to object on two grounds under the Federal Rules of Evidence. First, Jackson argues that Agent Hardie's testimony was "unduly prejudicial," meaning that trial counsel should have objected under Rule 403 of the Federal Rules of Evidence. Second, Jackson argues that the testimony was improper character evidence under Rule 404(a).

Jackson has failed to show that an objection under either ground is clearly meritorious such that his trial counsel was deficient for failing to raise it. As Jackson

acknowledges, the court previously ruled against Jackson and his co-defendants on a motion in limine to exclude Agent Hardie from providing expert testimony. ECF No. 681 at 4 n.1. Defendants argued in that motion in limine "that Agent Hardie does not have knowledge of the facts of this case." United States v. Jackson, 2017 WL 2362351, at *3 (D.S.C. May 31, 2017). The court determined that Agent Hardie had the requisite qualifications to testify about "the means used to recruit and control minors for prostitution" and "the pimp-prostitute subculture." Id. at *3. It further determined that such testimony was relevant, despite defendants' objections to the contrary. Id. at *4. In support, the court cited decisions of other courts that had permitted the use of similar expert testimony, including a Tenth Circuit decision that found "no abuse in discretion in allowing expert testimony on general characteristics of prostitute recruitment and retention, including use of affection, photographs, chemical dependency, trading prostitutes, and deprivation of family support." Id. (citing United States v. Sutherland, 191 F. App'x 737, 740–41 (10th Cir. 2006)). Accordingly, the court denied defendants' motion.

Here, the court finds that Agent Hardie ultimately testified within the parameters established by the court's order on the motion in limine. Although defendants brought their motion in limine under Rule 702 and Jackson now raises this motion under Rule 403, the court finds that for similar reasons discussed in its prior order, the probative value of Agent Hardie's testimony regarding the business of prostitution was not substantially outweighed by the danger of unfair prejudice. Even if the court found that Jackson never engaged in the acts that Agent Hardie testified were common to pimp-prostitute relationships—a claim that the government disputes, see ECF No. 695-1 at 3—

Agent Hardie's testimony was still relevant for other purposes, such as providing background about the subculture of prostitution.  See United States v. Anderson, 560 F.3d 275, 281–82 (5th Cir. 2009) (finding that there was no abuse of discretion in the trial court's decision to allow expert testimony on the general behavior of pimps).  As for Agent Hardie's testimony that sex trafficking victims fear testifying against their traffickers and that their work cannot be considered consensual, the court similarly finds that such background testimony was not unfairly prejudicial.

Since Hardie's testimony was relevant to the trial, Jackson's trial counsel cannot be faulted with raising a non-meritorious objection.  See Prysock v. United States, 2011 WL 1480137, at *4 (D.S.C. Apr. 19, 2011) ("It is axiomatic that failure to raise a meritless objection cannot serve as a ground for ineffective assistance of counsel.").  The court had previously ruled that Agent Hardie's testimony was relevant, and since the law-of-the-case doctrine applies to evidentiary rulings, Jackson's trial counsel did not err in deciding not to re-raise the objection.  See United States v. Siegel, 378 F. App'x 338, 340 (4th Cir. 2010) (holding that under the law-of-the-case doctrine, an interlocutory order that determined evidence was not barred by Rule 404(b) "should continue to govern the same issues in subsequent proceedings in the same case") (quoting Walker v. Kelly, 589 F.3d 127, 137 (4th Cir. 2009)).  The issue in an ineffective assistance of counsel claim is whether trial counsel's performance fell below an objective standard of reasonableness. Regardless of whether the court's ruling on the motion in limine was in error, Jackson's trial counsel did not commit error by relying on the same.

Finally, Jackson argues that his trial counsel should have objected under Rule 404(a).  Rule 404(a) bars "evidence of a person's character or character trait" from being

used "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Jackson's argument is premised on the notion that the government raised traits common to <u>other</u> sex traffickers. Therefore, Jackson implicitly acknowledges that Agent Hardie did not offer testimony about <u>Jackson's</u> character, and Rule 404(a) does not apply. In sum, Jackson's trial counsel was not constitutionally ineffective for failing to object to properly-admitted evidence.

### 2. Failure to Object to Gang-Affiliation Testimony

Next, Jackson argues that the government repeatedly introduced evidence and testimony that Jackson was a "Crip," and trial counsel should have objected to evidence of Jackson's alleged gang affiliation as improper character evidence and as unduly prejudicial. The government argues that Jackson previously raised this evidentiary issue on direct appeal, and the Fourth Circuit rejected it. The government argues that now, Jackson is attempting to "repackage" the rejected claim as an ineffective-assistance claim. ECF No. 695-1 at 12. In response, Jackson contends that his appellate counsel only made "cursory references" to the gang evidence and "did not engage th[e] issue on direct appeal in a sufficient manner to bring the matter to the [Fourth Circuit's] attention." ECF No. 700 at 3.

Upon review, the court finds that Jackson and his co-defendant did in fact discuss the elicitation of gang membership evidence in their direct appeal. Even if the appellate court did not ultimately address the issue, it was sufficiently raised. Specifically, Jackson and his co-defendant argued that "[t]here was repeated discussion about Jackson and McMillan being members of the Crips . . . . There was no testimony that the conspiracy was part of the Crip organization or that membership in the Crips related to the

'conspiracy.'"  ECF No. 695-3 at 128.  "[S]ection 2255 does not provide a secondary mechanism to file successive and repetitious claims on matters raised in a direct appeal by appending the phrase 'ineffective assistance of counsel.'"  Yanez-Hernandez v. United States, 2013 WL 2629779, at *1 (E.D.N.C. June 11, 2013) (citing Withrow v. Williams, 507 U.S. 680, 720–21 (1993) (Scalia, J., concurring)).  Since this matter was raised in a direct appeal, Jackson may not reraise it again under the guise of an ineffective assistance of counsel argument.

Moreover, even if the court were to construe the argument as a properly-raised collateral attack, the court does not find that the claim has merit.  In his § 2255 motion, Jackson argues that evidence of his gang affiliation was unfairly prejudicial because Jackson's jurors were aware that "gang affiliation has an extraordinary and well-founded connection with extreme violence," particularly as "Jackson was a member of one of the most violent street gangs in America."  ECF No. 681 at 12.  Jackson also argues that the evidence was inadmissible character evidence under Rule 404(a), and "the government did not even attempt to connect the gang membership with any motive, intent, or identification rationale."  Id.  However, at trial, the government explained to the court prior to admitting the gang-membership testimony that the evidence was relevant to "help[] show the conspiracy" and "help[] show the relationship between conspirators."  ECF No. 695-2 at 240.  Other courts have found no error in a trial court's decision to allow gang-related evidence for a similar purpose.  See, e.g., Mey v. Richardson, 2017 WL 1403320, at *5 (W.D. Wis. Apr. 19, 2017) (discussing the state court decision to admit gang-related evidence as relevant to show conspiracy).

In <u>Mey</u>, the court further determined that because of the state court's ruling in favor of admissibility, the defendant's trial lawyer did not err by "do[ing] what he could given the circumstances" and leaning into the evidence. <u>Id.</u> at *6. Jackson's trial counsel appeared to employ a similar strategy here. Jackson testified that he was in a "subset[]" of the Crips that none of his co-defendants were a part of. ECF No. 695-2 at 739:3–14. He further testified that members of one group of Crips did not get along with members of other Crips groups. <u>Id.</u> at 739:23–24. Trial counsel's choice to withhold objection and to instead <u>use</u> the gang-related evidence was a reasonable strategy that falls short of constituting a deprivation of counsel under the Sixth Amendment. <u>See</u> <u>Mey</u>, 2017 WL 1403320, at *6 ("True, despite this strategic choice, Mey was convicted. But given the circumstances, if the attorney's choice to use the gang-related evidence was—at most—a reasonable miscalculation, and that miscalculation falls short of being a deprivation of counsel under the Sixth Amendment."). Thus, Jackson has not carried his burden of showing that his attorney's supposed error amounted to ineffective assistance.

### 3. Failure to Request a Limiting Instruction on Gang-Affiliation Testimony

In the alternative to an objection, Jackson argues that his trial counsel should have requested that the court give a limiting instruction to the jury on the gang-affiliation evidence to avoid jury prejudice. Jackson fails to specify what sort of jury instruction the court should have provided. Instead, Jackson cites two cases for the proposition that a limiting instruction is necessary to cure any prejudice from the admission of improper evidence. ECF No. 681 at 14. But both cases fail to support Jackson's motion. In both <u>United States v. Hayden</u>, 85 F.3d 153 (4th Cir. 1996), and <u>United States v. McKay</u>, 431 F.3d 1085 (8th Cir. 2005), the courts found that the defendants did not suffer any

prejudice because of limiting instructions provided by the trial judges.  But both courts'

holdings that jury instructions are sufficient to cure prejudice does not mean that a court's

theoretical <u>failure</u> to offer a limiting instruction is a <u>per se</u> error.

Moreover, as the government notes, the court issued an instruction to the jury

when charging them about conspiracy.  The court instructed that "[m]ere membership in

a gang or association of two or more persons, defendants, is insufficient to prove a

venture under 1591(a)(2)."  ECF No. 695-2 at 1068.  Thus, the court took the very step

that Jackson claims would have cured any prejudice, and as such, Jackson's trial counsel

was not deficient in failing to request what would have been a redundant instruction.

### 4.  Failure to Object to Co-Defendant's Opening Statement

Under what is labeled Ground Five in the § 2255 motion, Jackson argues that his

trial counsel failed to object to a statement made by Lindsey Cooper ("Cooper"), who

was representing Jackson's co-defendant and was effectively serving as co-counsel with

Jackson's attorney.  During his opening statement, Cooper told the jury:

> And as well, I have the honor to be here in Federal Court, and I have the
> honor to represent these defendants before you.  Because like Your Honor
> told you, every defendant is presumed innocent.  <u>And it's our job to
> demonstrate to you that they are innocent</u>, and that's what we're doing here
> today.

<u>Id.</u> at 185:8–14 (emphasis added).  Jackson argues that Cooper's statement improperly

shifted the burden of proof from the government to the defense, and Jackson's trial

counsel should have either objected to the remark or asked the court to reaffirm the

government's burden of proof to the jury.

The government presents two arguments in response.  First, the government

disputes that Cooper's comment was meant to be a pronouncement on the burden of

proof in the case.  Namely, the government points out that elsewhere in the opening

statement, Cooper explicitly mentioned the government's burden of proof.  ECF No. 695-1 at 17 (citing id. at 187–88).  The government concludes that since Cooper did not commit an error in his opening statement, Jackson's trial counsel did not need to correct the presentation.  Second, the government argues that Cooper's error did not prejudice Jackson.

The court agrees that even if Cooper wrongfully stated that it was defense counsel's job to demonstrate defendants' innocence, limited prejudice flowed from such an error given other statements made by both Cooper and the court.  Indeed, the case that Jackson cites in support, Cupp v. Naughten, 414 U.S. 141 (1973), belies rather than supports his position.  There, the Supreme Court held that a trial judge did not improperly shift the burden to the defendant by instructing the jury that it must presume that a witness testified truthfully.  The court explained that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  Id. at 147 (citing Boyd. v. United States, 271 U.S. 104, 107 (1926)).  Based on that well-established proposition, the court found it relevant that in addition to the presumption-of-truthfulness instruction, the trial court also gave two "explicit instructions affirming the presumption of innocence and declaring the obligation of the State to prove guilt beyond a reasonable doubt."  Id.  Accordingly, the trial court's "ailing instruction" did not "infect[] the entire trial" such that it violated due process.  Id.

Here, in addition to Cooper's statements, the court instructed the jury on the burden of proof at the beginning of trial.  The court stated that "[t]he Government has the burden of proving Mr. Jackson, McMillan and Miller guilty beyond a reasonable doubt.

And if it fails to do so, you must acquit them." ECF No. 695-2 at 163:19–21. Later, the

court reiterated:

> Now, because the Government has the burden of proof, it will go forward and present its testimony and evidence first. After the Government finishes or rests, what they call its case in chief, Mr. Jackson and Mr. McMillan and Mr. Miller may call witnesses and present evidence, if they wish to do so. However, you remember that the [C]onstitution and laws of the United States do not require any defendant to prove his innocence or produce any evidence at all. And no inference whatsoever may be drawn from the decisions of Mr. Jackson, Mr. McMillan and Mr. Miller not to testify, if they so choose.

ECF No. 695-2 at 165:2–11. Finally, at the conclusion of trial and before handing the

case to the jury, the court once again instructed:

> Mr. Jackson and [co-defendants] have pleaded not guilty to the indictment. As a result of their plea of not guilty, the burden is on the prosecution to prove guilty beyond a reasonable doubt. It is never the burden for any defendant to . . . prove himself innocent. The burden never shifts to a defendant for the simple reason that the law never imposes on any defendant in a criminal case the burden or duty of testifying or calling any witnesses or producing any evidence.

ECF No. 695-2 at 1052:6–14.

Based on the court's instructions, Jackson cannot establish a reasonable

probability that the result of the proceeding would have been different even if Jackson's

trial counsel had objected to co-counsel's opening statement. As such, the court need not

decide whether Jackson's trial counsel was ineffective for failing to object because

Jackson cannot show that any deficient performance prejudiced him.

### 5. Failure to Object to Hearsay

Under what is labeled Ground Six in Jackson's § 2255 motion, Jackson argues

that his trial counsel rendered ineffective assistance by failing to object to hearsay that

portrayed Jackson as violent and ruthless. Specifically, Jackson objects to the following

exchange during the direct examination of one of the alleged victims:

14

> Q:     Did she have a nickname?
> A:     When she was with us, her name was Molly.
> Q:     And what did you hear about her?  And who did you hear it from?
> A      Her.
> Q:     Did you hear anything from Sincere?[3]
> A:     Yes.
> Q:     And what did he say?
> A:     He said that Deejay[4] called him and told him to keep Bethany with him, make sure that the bitch didn't show up to court.  And basically that's it.  That's what he told me.

ECF No. 695-2 at 338:1–11.  Jackson argues that his trial counsel should have been aware that the government was attempting to elicit hearsay testimony as soon as the witness was asked if she "hear[d] anything from Sincere."

Tremel Black ("Black"), Jackson's co-defendant, was the declarant of the statement in question.  Under Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if the "statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy."  Just a few moments before the statement in question was elicited, the government asked the same witness whether Black had told her about another victim getting "beat."  ECF No. 695-2 at 332:1–3.  After the witness responded "Yes," Jackson's trial counsel objected on the grounds of hearsay.  Id. at 332:3–4.  The government responded that the statement was made by a co-conspirator, and the court overruled the objection.  Id. at 332:5–6.  Based on the court's ruling, trial counsel cannot be faulted for failing to object again; it was reasonable for counsel to assume Black's statement about Jackson and "Bethany" was admissible under the same rule.  Thus, had counsel objected, the objection would have

---

[3] "Sincere" is a nickname for Jackson's co-defendant, Tremel Black.  ECF No. 695-1 at 21.

[4] "DeeJay" or "DJ" are nicknames for Jackson.  ECF No. 681 at 21 n.3.

been overruled for the same reason, and in any event, trial counsel's decision not to object fell within the wide range of reasonable professional assistance.

In his response to the government's motion, Jackson argues that even if the statement were admissible as an admission by a co-conspirator, the statement should have been excluded for being unfairly prejudicial. The court does not find that the probative value of the statement was substantially outweighed by the danger of the unfair prejudice, and even if it were, trial counsel's decision not to object was not unreasonable under Strickland's deferential standard. Accordingly, the court dismisses Jackson's claim.

### 6. Failure to Object to Improper Character Evidence from Da-Shun Curry

Next, Jackson argues that the government elicited improper character evidence during the direct examination of Da-Shun Curry ("Curry"), another one of Jackson's co-defendants. Jackson directs the court to the following exchange:

> Q:    What's Jack Boys?
> A:    It's a neighborhood gang that we had came up with as in for like being hype. Like being hype, the hype boys.
> Q:    And what would the Jack Boys do?
> A:    Just go to the club.
> Q:    Did y'all engage in any criminal activity?
> A:    Yeah, some of us did.
> Q:    What was that?
> A:    Robbing, shooting, things like that.

ECF No. 695-2 at 501:20 – 502:3. Jackson acknowledges that Curry later denied that Jackson was a member of the "Jack Boys." ECF No. 681 at 23. Even so, Jackson claims that the testimony was "clearly offered to show Jackson's association with other violent criminals." Id.

Again, under Rule 404(b), evidence of a crime, wrong, or other bad act is not admissible to prove a person's character to show that the person acted in accordance with

16

that character.  Curry explicitly denied that Jackson was a member of the Jack Boys, and there were no other assertions that he was a member.  As such, evidence that members of the Jack Boys engaged in criminal activities by participating in robberies or shootings is not evidence that Jackson acted in accordance with the trait of violence suggested by those acts.  Thus, Jackson's trial counsel was not unreasonable in opting not to object.

### 7. Failure to Object to Improper 404(b) Evidence from Officer Benton

Jackson argues that during the testimony of Officer Charlie Benton ("Officer Benton"), the government elicited testimony for the purpose of showing "how dangerous and violent" Jackson and the other defendants were.  Specifically, Jackson argues that trial counsel failed to object to the following exchange:

> Q:    Okay.  And the ones that you tracked down, so Briana Evans, she happy to be here yesterday?
> A:    Absolutely not.
> Q:    Was it hard to get her to actually come over here and testify?
> A:    It was very difficult.  She wanted to have multiple armed law enforcement officers with her.

ECF No. 695-2 at 606.  According to Jackson, Officer Benton's testimony that Briana Evans ("Evans"), one of the victim-witnesses, requested law enforcement officers to remain with her was essentially testimony "that Jackson and his co-defendants wanted her dead."  ECF No. 681 at 24.  In response, the government argues that Officer Benton's testimony does not refer to a prior crime, wrong, or other act that Jackson committed. While that is certainly true—and thus, Rule 404(b) does not apply—Officer Benton's testimony could reasonably be read as suggesting that Jackson possessed the character trait of violence.  Such testimony would theoretically be inadmissible under Rule 404(a).

Even so, the testimony was not offered to show that Jackson acted in accordance with that character trait on a particular occasion.  Indeed, Jackson's name was not

mentioned in the preceding or subsequent testimony.  Rather, Officer Benton was in the middle of testifying about his process for "tracking down victims," ECF No. 695-2 at 638:19, which the government argues was meant to rebut defendants' criticism of Officer Benton's investigation.  The court finds that the record supports the government's characterization of the testimony.  Consequently, Jackson's trial counsel was not deficient for failing to object.

Even if trial counsel had acted deficiently, the error did not prejudice Jackson.  As the government observes in its reply, it had the burden to prove that Jackson used force, fraud, and coercion under each of the charges.  Even if Jackson had objected—and the court barred the government from asking Officer Benton to testify about Jackson's "dangerousness," ECF No. 700 at 6—the government properly raised evidence of how Jackson treated the alleged victims at other instances during trial, none of which Jackson objects to.  ECF No. 704 at 4 (noting that the government introduced evidence that Jackson told a victim he gave her AIDS, scared his prostitutes into never meeting another man's gaze, and beat up his prostitutes).  It is unlikely that the jury would have returned a different verdict if counsel had objected to this testimony given the admissible evidence and testimony elsewhere in the trial that supported the jury's conviction.  Accordingly, the court denies Jackson's claim under Ground VIII.

### 8.  Rendering Inaccurate Advice

Under Ground IX, Jackson claims that trial counsel erroneously told Jackson that he would be subject to a mandatory minimum of fifteen years if he pled guilty to the conspiracy charge.  Jackson argues that the advice was incorrect because had he pled guilty to the sole count of conspiracy under § 1594(c), he would not have been subject to

any mandatory minimum as the statute's minimum sentence only applies if the defendant pleads guilty to any of the substantive counts under 18 U.S.C. § 1591. Jackson allegedly declined the government's plea offer based on this advice but now claims he would have pled guilty had he received accurate advice about sentencing under the conspiracy charge. ECF No. 681 at 25.

Jackson refers to advice that Jackson's trial counsel provided through a letter on February 24, 2017. ECF No. 688. In the letter, trial counsel informed Jackson that if he were to plead guilty, "[t]he issue will be that the 15 year minimum will kick in and the only way around that is through the government's filing a motion for downward departure." ECF No. 688 at 1. In the next paragraph, trial counsel told Jackson that he had an offer from the government to plead guilty "to the conspiracy charge in Count 1 and dismiss the remaining charges." Id. at 2. In its motion for summary judgment, the government claims that trial counsel was incorrect about the government's offer but provided fundamentally accurate advice about the mandatory minimum. Citing a declaration from Jackson's trial counsel, the government notes that there was only one offer on the table at the time, which was an offer to plead guilty to both Counts 1 and 2. ECF No. 695-1 at 28–29 (citing ECF No. 695-4, Murphy Decl. ¶ 7(A)). Count 2 charged a substantive offense that would have triggered the conspiracy statute's mandatory minimum. Thus, Jackson's "citations of the 15-year minimum in the letter were a reference back to the [February 24] written offer for Jackson to plead guilty to Counts 1 and 2." ECF No. 695-1 at 29–30 (citing Murphy Decl. ¶ 7(C)–(G)). At that time, there was no offer to allow Jackson to plead only to Count 1, and trial counsel states that he did not advise him on such a deal because it did not exist. Murphy Decl. ¶ 7(G).

19

Following receipt of the letter, Jackson's trial counsel emailed the government asking if Jackson could get a plea deal similar to the one that his co-defendant, Black, received. The government responded that it "would consider" offering the same deal that Black accepted: a recommended sentencing range of ten to twenty years in exchange for cooperation. ECF No. 695-4 at 39. On March 17, 2017, the government made a formal written offer to Jackson. Under the terms of the offer, Jackson would plead guilty to Count 1 only, cooperate, and receive a non-binding recommendation of ten to twenty years. Id. at 44–51. Trial counsel drove to the jail and presented the offer to Jackson with the belief that it was the best deal given to any of the defendants and that Jackson would accept it. Murphy Decl. ¶ 16. Nevertheless, Jackson refused to accept the offer and instead proceeded to trial.

A defendant may establish an ineffective assistance claim if the defendant, relying on erroneous advice from his counsel, rejected a plea offer, proceeded to trial, and was convicted of a more serious crime than he would have pled guilty to or received a harsher sentence than was recommended under the terms of the plea offer. See Lafler v. Cooper, 566 U.S. 156, 163 (2012). To establish prejudice "[i]n the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advice." Id. (citing Missouri v. Frye, 566 U.S. 134, 148 (2012)). This includes proving "there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)." Id. at 164. The government argues that Jackson has failed to establish both prongs under Strickland. First, the government argues that trial counsel reasonably advised Jackson about his existing plea

options because the reference to the fifteen-year minimum was controlling.  Second, the

government argues that Jackson was not prejudiced by any error.

     Neither side disputes that trial counsel made at least one misstatement in the

February 24 letter.  See ECF No. 695-1 at 32 ("While the February 24 letter could have

been more carefully written, at worst it created confusion about an offer that, at that time,

did not exist.").  The court agrees, however, that trial counsel was not deficient based on

that error alone because trial counsel was ultimately correct that proceeding on a guilty

plea under Counts 1 and 2 would have resulted in a mandatory minimum of fifteen years.

See 18 U.S.C. § 1591(b)(1).

     More importantly, the court concludes that the error did not prejudice Jackson.

Murphy's declaration reveals that the government subsequently offered Jackson the

opportunity to plead guilty to Count 1 in return for a non-binding recommendation of ten

to twenty years of imprisonment.  Even assuming that trial counsel somehow could have

relayed an offer below the fifteen-year statutory minimum in the February 24, 2017

letter—and to be clear, that would have been impossible since such an offer did not

exist—Jackson cannot establish a reasonable probability that he would have accepted the

plea on February 24.  Murphy confirms that when he received a plea offer for the single

conspiracy charge on March 17, 2017, Jackson refused the deal and proceeded to trial.

Murphy Decl. ¶ 16.  Thus, it is unlikely Jackson would have previously accepted a plea

agreement for a single charge of conspiracy, resulting in a non-binding recommendation

of ten to twenty years, because Jackson rejected such an offer less than a month later.  It

is simple for Jackson to state in hindsight that he would have accepted a plea offer, but it

is telling that when faced with an offer where the fifteen-year mandatory sentence did not apply, Jackson declined the offer.

In sum, Jackson's argument on this ground fails for two reasons. First, the alleged deal without a mandatory minimum did not exist on February 24th, and therefore trial counsel's conduct did not fall below an objectively reasonable standard for failing to advise his client about a deal that did not exist. Second, when presented with that deal a month later, Jackson declined it. It would be illogical to now find that Jackson can establish a reasonable probability of a different outcome given those two facts. Since Jackson has failed to establish a reasonable probability that the result of the proceeding would have been different, the court denies his claim.

### 9.  Failure to Object to Improper 404(b) Evidence from Sierra Davis

Under Ground X, Jackson argues that even though he was not indicted for sex trafficking one of the alleged victims, Sierra Davis ("Davis"), she was nevertheless allowed to testify against Jackson. Davis testified that she met Jackson when she was seventeen years old over a dating website and he immediately involved her in prostitution. ECF No. 695-2 at 319:20–23, 320:3–7, 22–24. She testified that Jackson forced her to stay in a hotel room, and she felt compelled to stay because she "didn't have a choice." Id. at 321:23–322:1. Jackson later took Davis from her home in Columbia to Atlanta, posted ads for her services, and, finally, gave her to Black, Jackson's co-defendant. Id. at 324:6–16, 19–20, 326:10–12. Jackson argues that since he was not indicted for his involvement with Davis, her testimony about his actions was improper evidence of a prior crime, wrong, or other act used to prove propensity under Rule

404(b).  Accordingly, Jackson contends that trial counsel should have objected to Davis's testimony.

As Jackson acknowledges, Rule 404(b) is "only applicable when the challenged evidence is extrinsic, that is, 'separate' from or 'unrelated' to the charged offense." United States v. Bush, 944 F.3d 189, 195 (4th Cir. 2019) (quoting United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994)).  On the other hand, criminal acts are admissible as intrinsic evidence "when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged."  Id. (quoting United States v. Chin, 83 F.3d 83, 88 (4th Cir. 1996)).  In other words, evidence is intrinsic if it "forms an integral and natural part . . . of the circumstances surrounding the offenses for which the defendant was indicted" and "serve[s] to complete the story of the crime on trial."  Id. (alteration in original and citations omitted).

Here, the mere fact that Jackson was not indicted for sex trafficking Davis does not reflexively mean her testimony must be considered extrinsic evidence.  Critically, Jackson and his co-defendants were all charged with conspiracy to commit sex trafficking.  The superseding indictment alleged that defendants carried out the scheme by, inter alia, recruiting underage victims to work for them; placing advertisements on the internet advertising for commercial sex acts; using vehicles, public highways, hotels, etc. to facilitate the commercial sex acts; and physically beating or threatening the victims to scare and control them.  ECF No. 167 at 3.  Davis's testimony, as reflected above, touched on several of those allegations.  As such, Davis's testimony about the acts that

Jackson committed were part of a single criminal episode and served to complete the story of the crime.

Other courts have confirmed that testimony that goes to the existence of a conspiracy is not considered extrinsic.  See, e.g., United States v. Wright, 2013 WL 1729433, at *4 (D.S.C. Apr. 22, 2013) (explaining that testimony about acts that occurred during "the time frame of the conspiracy charged in the indictment" were not "other crimes, wrongs or acts," and as such, any objection based on Rule 404(b) would have been non-meritorious); United States v. Evans, 272 F.3d 1069, 1084 (8th Cir. 2001) ("Derry misconstrues this testimony as character evidence to be evaluated under Rule 404(b) when, in fact, it is direct evidence of the Mann Act violations and the conspiracy. The rape—along with various other violent acts introduced into evidence—were actions taken to recruit, control, and discipline prostitutes.").  Since "[e]vidence of uncharged conduct" that otherwise meets the meaning of intrinsic evidence "do[es] not qualify as evidence of 'other crimes,'" trial counsel was not deficient for failing to object.  United States v. McBride, 676 F.3d 385, 396 (4th Cir. 2012).

### 10. Failure to Argue that the Government Did Not Provide Proof of Underage Status

In his final claim, Jackson argues that his trial counsel rendered ineffective assistance when he did not argue that the government failed to meet its burden of proving the age of the underage victims.  Both Jackson and the government agree that to prove the sex trafficking charges, the government had the burden of showing that Jackson either knew or was in reckless disregard of the facts that (1) the person was under the age of eighteen and would be made to engage in a commercial sex act, or (2) means of force,

24

threats of force, fraud, or coercion would be used to cause the person to engage in a commercial sex act.  ECF No. 681 at 29; ECF No. 695-1 at 41.

Jackson simply claims that the government "fail[ed] to offer evidence as to the ages of the purported minors" but does not elaborate any further.  ECF No. 681 at 29. The government clarifies that Jackson was convicted on three charges that involved minor victims: Count 1 for conspiracy to commit sex trafficking; Count 2 for trafficking of a minor for sex involving force, fraud, and coercion as it related to alleged victim "D.B."; and Count 3 for trafficking of a minor for sex involving force, fraud, and coercion as it related to alleged victim "S.P."  ECF No. 695-1 at 42.  Count 1 required evidence that at least one victim of the conspiracy was a minor.  The government further notes that Count 2 was ultimately pared down to a charge for force, fraud, or coercion while Count 3 was pared down to a charge for sex trafficking of a minor.  As such, the government argues that evidence of S.P.'s status as a minor was sufficient to sustain all of Jackson's convictions.

Jackson does not offer any other interpretation, and the court agrees that Jackson must necessarily argue that the government did not offer evidence that S.P. was a minor. The court further agrees that the record supports the conclusion that such evidence was introduced by the government.  To be sure, Jackson argued on direct appeal that "neither [S.P.] nor her family testified" and no evidence such as birth certificates or other birth records were offered to prove her age.  ECF No. 695-3 at 106.  But Jackson acknowledged in the very same brief that the government presented evidence from Da-Shun Curry, who testified that when he "got locked up, [he] found out she [S.P.] was 15 years old.  Or 16 years old."  Id. (citing ECF No. 695-2 at 7–8).  Jackson then argued that

Curry's testimony was hearsay, but the Fourth Circuit did not address the argument. At other points in the trial, the government admitted testimony from Officer Benton and Agent Shawn Caines about S.P.'s age. ECF No. 695-3 at 108. Officer Benton testified that S.P. was sixteen, that she was born in January 1999, and that she was reported as a missing minor. ECF No. 695-2 at 581:23–582:5. Agent Caines stated that he and another officer independently confirmed that S.P. was underage at the time she was sex trafficked. Id. at 667:5–8. Regardless of whether the testimony was properly admitted, Jackson cannot reasonably dispute that once the evidence was admitted, it would have been futile for trial counsel to argue that the government had not met its burden of proof. Thus, Jackson's last claim directed at trial counsel under Strickland fails, and the court grants summary judgment in the government's favor.

### B. Appellate Counsel

Finally, under what is labeled Ground IV in his § 2255 motion, Jackson argues that his appellate counsel rendered ineffective assistance of counsel. Specifically, Jackson argues that his appellate counsel failed to challenge the sufficiency of the government's evidence under Count 5, which alleged that Jackson participated in the sex trafficking of Briana Evans ("Evans").

A defendant is constitutionally entitled to effective assistance of appellate counsel. Evitts v. Lucey, 469 U.S. 387, 393–94 (1985). But appellate counsel is under no obligation to "raise every 'colorable' claim suggested by a client." Jones v. Barnes, 463 U.S. 745, 754 (1983). In assessing a claim that appellate counsel was ineffective for failing to pursue an issue on appeal, "reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'"

Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)).  "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'"  Id. at 164 (quoting Smith v. Robbins, 528 U.S. 259, 286 (2000)).  "To establish prejudice relating to the actions of appellate counsel, [a petitioner] must establish a reasonable probability that, but for his counsel's unreasonable failure to include a particular issue on appeal, he would have prevailed on his appeal."  United States v. Johnson, 2015 WL 6437097, at *2 (D.S.C. Oct. 22, 2015).

Here, Jackson argues that appellate counsel should have directed arguments toward the issue of whether Jackson forced or coerced Evans to engage in commercial sex acts, as required under 18 U.S.C. § 1591.  But the court cannot agree with Jackson that the supposed deficiency of the evidence related to Evans, if raised, would have been "much stronger than any of the other issues that were raised on Jackson's behalf."  ECF No. 681 at 19.  Jackson's appellate counsel consolidated Jackson's appeal with those of two co-defendants, and the lawyers submitted a single brief.  As the government correctly notes, counsel made the strategic decision to mostly raise arguments regarding the integrity of the entire trial which, if successful, would have led to dismissal of all counts, not just Count 5.  For example, appellate counsel argued that the court should have given the jury an instruction on the existence of multiple conspiracies, ECF No. 695-3 at 62; that the court should have provided a specific unanimity instruction, id. at 72; and that the government violated the golden rule, id. at 114.  The court finds that the strategic decision to exclude other issues on appeal, including the sufficiency of the government's

evidence under Count 5, was based on reasonable professional judgment.  See Griffin v. Aiken, 775 F.2d 1226, 1234 (4th Cir. 1985).

Even if the court were to consider the merits of Jackson's argument, the court finds that Jackson has not established prejudice because there is no reasonable probability that he would have otherwise prevailed on his appeal.  In support of the argument that Jackson claims appellate counsel should have made, Jackson presents a detailed account of Evans's testimony and notes that no evidence of force or coercion was elicited. Jackson, however, omits a few pertinent facts.  For one thing, Evans herself testified that she worked for Jackson because she felt "scared," "trapped," and without "a way out." ECF No. 695-2 at 287:1–6.  She testified that Jackson had a rule that she was not allowed to talk to anybody or look anyone in the face.  Id. at 259:18–21.  Although Evans could not recall if Jackson was ever violent with her, she testified that she saw him grab, push, hit, and throw another prostitute in front of Evans.  Id. at 260:9–15.  Additionally, contrary to Jackson's assertion that there was no evidence he used drugs to coerce Evans into conduct she would not have otherwise engaged in, the government presented testimony that sex traffickers use drugs as a means of control and use a victim's addiction against herself.  Id. at 205 at 3–8.  Evans testified that Jackson specifically permitted her to use drugs while other prostitutes were prohibited from doing the same.  Id. at 261:12–13, 262:10–12.

Based on the evidence, the court finds that Jackson was not prejudiced by appellate counsel's failure to raise the argument regarding Count 5.  While the court cannot say with certainty that the Fourth Circuit would have rejected Jackson's proposed argument, the court finds that Jackson has failed to present a reasonable probability that

28

the appellate court would have overturned Jackson's conviction under Count 5 had counsel made the argument.[5]  And again, even if the court were to have determined that such a reasonable probability existed, that finding would be inconsequential given that Jackson's appellate counsel did not act unreasonably in omitting the argument.  For those reasons, the court denies Jackson's claim for ineffective assistance of appellate counsel.

### C.  Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 proceedings provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  An applicant satisfies this standard by establishing that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003).  Here, Jackson does not meet this standard because there is nothing debatable about the court's resolution of his § 2255 petition.  Accordingly, the court will deny a certificate of appealability.

---

[5] In its motion for summary judgment, the government notes that in the direct appeal brief, Jackson's co-defendant, Miller, argued that the court should have granted a direct verdict to Miller—including on a substantive charge related to victim Evans.  ECF No. 695-1 at 48 (citing ECF No. 695-3 at 11).  Since the Fourth Circuit rejected Miller's argument as it related to the substantive charge, McMillan, 813 F. App'x at 847 n.1, the government argues that the Fourth Circuit would have similarly disposed of Jackson's argument if it had been made, ECF No. 695-1 at 49.  But the facts surrounding Jackson's alleged force, fraud, or coercion differ from those allegedly committed by Miller, and as such, the court places no weight in the government's argument.  For the other reasons stated above though, the court nevertheless finds that Jackson's claim fails.

### V.  CONCLUSION

For the reasons set forth above, the court **DENIES** Jackson's motion to vacate, set aside, or correct sentence and **GRANTS** the government's motion for summary judgment.  Additionally, the court **DENIES** a certificate of appealability.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 21, 2022**
**Charleston, South Carolina**